**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Polly-Murphy*, **Slip Opinion No. 2021-Ohio-3302.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3302

COLUMBUS BAR ASSOCIATION *v*. POLLY-MURPHY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Polly-Murphy*, Slip Opinion No. 2021-Ohio-3302.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Conditionally stayed one-year suspension.*

(No. 2021-0440—Submitted May 12, 2021—Decided September 22, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-047.

_____

**Per Curiam.**

{¶ 1} Respondent, Michelle Lyn Polly-Murphy, of Columbus, Ohio, Attorney Registration No. 0072091, was admitted to the practice of law in Ohio in 2000.[1]

_____

1. Polly-Murphy is also admitted to practice law in Missouri and Kansas.

**{¶ 2}** In an August 24, 2020 complaint, relator, Columbus Bar Association, alleged that Polly-Murphy violated four Rules of Professional Conduct related to her representation of two clients. The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors and jointly recommended that the appropriate sanction for Polly-Murphy's misconduct is a conditionally stayed one-year suspension.

**{¶ 3}** Polly-Murphy testified at a hearing before a three-member panel of the Board of Professional Conduct. After the hearing, the panel unanimously dismissed one of the stipulated rule violations. The panel subsequently issued a report finding that Polly-Murphy had committed the three remaining stipulated violations and recommending the parties' stipulated sanction. The board adopted the panel's report in its entirety and no objections have been filed.

**{¶ 4}** After reviewing the record in this case, we adopt the board's findings of misconduct and recommended sanction.

### Stipulated Facts and Misconduct

**{¶ 5}** Polly-Murphy was an associate with the firm of Cooke Demers, L.L.C., from December 2014 until April 25, 2019. She performed creditors' rights work for institutional-lender clients.

**{¶ 6}** During her tenure with Cooke Demers, Polly-Murphy provided legal assistance to a friend in connection with the creation of Advanced Health Brands ("AHB"), a company that was developing transdermal patches. Polly-Murphy had a 1 percent ownership interest in and was an officer of AHB. She also provided legal services to Nutriband, Inc., a health and pharmaceutical company focused on transdermal and topical technologies for product development that entered into an agreement to acquire AHB. Polly-Murphy prepared a share-exchange agreement on behalf of AHB in connection with that acquisition, and based on the terms of the acquisition, she acquired an ownership interest in Nutriband. Although it was Polly-Murphy's responsibility to inform Cooke

Demers of any clients that she undertook to represent, she did not inform the firm that she was performing legal services for those companies. Nor did she employ the firm's standard practices for establishing those companies as new clients.

{¶ 7} Before Nutriband acquired AHB, Nutriband's CEO asked Polly-Murphy to furnish a legal opinion in response to an inquiry from the United States Securities and Exchange Commission ("SEC"). The applicability of United States Food and Drug Administration ("FDA") regulations to AHB's transdermal patches was central to the SEC inquiry. On April 24, 2017, Polly-Murphy furnished a legal opinion to Nutriband stating that AHB's transdermal patches did not require approval from, and were not otherwise regulated by, the FDA—but her opinion was legally wrong.

{¶ 8} In May 2017, shortly after Nutriband's acquisition of AHB closed, an SEC attorney e-mailed Polly-Murphy regarding its investigation of Nutriband. In December 2017, the SEC issued a subpoena to Polly-Murphy directing her to produce documents related to the Nutriband investigation. Polly-Murphy cooperated, providing the SEC with documents and two sworn declarations regarding the legal opinion that she had provided to Nutriband about the FDA's regulation of its transdermal patches.

{¶ 9} In addition to her April 2017 legal opinion, from the fall of 2017 through the spring of 2018, Polly-Murphy prepared 10 to 12 "144 letters" for Nutriband on Cooke Demers letterhead, authorizing Nutriband shareholders to sell their restricted shares. *See* Securities Act Rule 144, 17 C.F.R. 230.144. In early May 2018, Nutriband's CEO sent a text message to Polly-Murphy indicating that she would be receiving a payment for her past legal work, and on May 29, he made a direct deposit of $5,000 into Polly-Murphy's personal bank account. Polly-Murphy did not inform Cooke Demers that she had received that payment.

{¶ 10} On December 31, 2018, an attorney representing Nutriband wrote to Polly-Murphy and Cooke Demers seeking the preservation of documents in

anticipation of a malpractice suit based in part on Polly-Murphy's faulty opinion regarding FDA regulation of transdermal patches. Prior to receiving that letter, Cooke Demers had no knowledge of Polly-Murphy's activities on behalf of AHB or Nutriband—or her cooperation in the SEC investigation.

{¶ 11} On April 25, 2019, Cooke Demers terminated Polly-Murphy's employment after conducting a detailed investigation. Nutriband commenced litigation against Polly-Murphy and AHB shareholders in Florida and New York, alleging fraud and seeking a return of its shares, in part because AHB's transdermal patch "does not work and has failed to get FDA approval."

{¶ 12} On December 26, 2018, the SEC issued a cease-and-desist order, finding that Nutriband had made misleading statements regarding the FDA's jurisdiction over its products in six public filings and imposing fines of $25,000 against Nutriband's CEO and CFO. Cooke Demers and its partners entered into a confidential agreement with Polly-Murphy, settling all of their claims arising from the legal work that she had performed for AHB and Nutriband.

{¶ 13} The parties stipulated and the board found that Polly-Murphy violated three professional-conduct rules. First, the board found that she violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client) by providing Nutriband with inaccurate legal advice concerning FDA regulation of the transdermal patches. Second, the board found that she violated Prof.Cond.R. 1.8 (prohibiting a lawyer from entering into a business transaction with a client unless the client is advised in writing of the desirability of obtaining independent legal counsel and the terms of the transaction are fair, reasonable, and fully disclosed in a writing signed by the client) by accepting stock in AHB and Nutriband without providing the required notice and obtaining the informed consent of those clients. Finally, the board found that Polly-Murphy violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving

dishonesty, fraud, deceit, or misrepresentation) by accepting a $5,000 payment from Nutriband without disclosing that payment to Cooke Demers.

{¶ 14} We adopt these findings of misconduct.

## Sanction

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} With regard to aggravating factors, the parties stipulated and the board found that Polly-Murphy acted with a dishonest or selfish motive. *See* Gov.Bar R. V(13)(B)(2). The board also found that she engaged in a pattern of misconduct and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4). As for mitigating factors, the parties stipulated and the board agreed that Polly-Murphy made restitution to Cooke Demers, exhibited a cooperative attitude toward the disciplinary proceedings, and presented evidence of her good character and reputation. *See* Gov.Bar R. V(13)(C)(3), (4), and (5). The board also noted that she had no prior discipline, *see* Gov.Bar R. V(13)(C)(1), and found that Polly-Murphy had acknowledged the wrongful nature of her conduct.

{¶ 17} The parties stipulated that a conditionally stayed one-year suspension is the appropriate sanction for Polly-Murphy's misconduct. In support of that sanction, they cited three cases in which we publicly reprimanded attorneys who, among other things, provided incompetent representation and/or neglected a single client's legal matter and failed to inform the client that the attorney did not carry professional-liability insurance. *See Disciplinary Counsel v. Domis*, 156 Ohio St.3d 360, 2019-Ohio-955, 126 N.E.3d 1129; *Disciplinary Counsel v. Mickens*, 151 Ohio St.3d 302, 2016-Ohio-8022, 88 N.E.3d 920; *Lorain Cty. Bar Assn. v. Nelson*, 144 Ohio St.3d 414, 2015-Ohio-4337, 44 N.E.3d 268.

{¶ 18} The parties also cited two cases in which we imposed conditionally stayed suspensions on attorneys who essentially misappropriated funds from their law firms. In *Disciplinary Counsel v. Grigsby*, 128 Ohio St.3d 413, 2011-Ohio-1446, 945 N.E.2d 512, the attorney pleaded guilty to a first-degree misdemeanor offense for charging more than $2,900 in personal expenses to her law firm's credit card over a period of nearly three years. We found that the attorney had engaged in an illegal act that adversely reflected on her honesty and trustworthiness, and further, that her conduct involved dishonesty, fraud, deceit, or misrepresentation and adversely reflected on her fitness to practice law. We imposed a conditionally stayed 18-month suspension for that misconduct.

{¶ 19} In *Disciplinary Counsel v. Vanderburg*, 157 Ohio St.3d 395, 2019-Ohio-4227, 137 N.E.3d 82, an attorney purchased products from one of his law firm's clients in exchange for a credit of approximately $28,000 against the amount the client owed to the firm, but he did not reimburse the firm for his purchases. We found that Vanderburg engaged in dishonesty, fraud, deceit, or misrepresentation and imposed a conditionally stayed one-year suspension for that misconduct.

{¶ 20} The board noted that of the cases cited by the parties, only Grigsby acted with a dishonest or selfish motive, as Polly-Murphy did here. But in light of the significant mitigating evidence present in this case, the board recommended that we suspend Polly-Murphy from the practice of law for one year with the entire suspension stayed on the conditions that she commit no further misconduct and pay the costs of this proceeding.

{¶ 21} After reviewing the record, the board's findings of fact and conclusions of law, the applicable aggravating and mitigating factors, and the sanctions that we have imposed for comparable misconduct, we find that the board's recommended sanction is the appropriate sanction in this case.

**Conclusion**

{¶ 22} Accordingly, Michelle Lyn Polly-Murphy is suspended from the practice of law in Ohio for one year with the suspension stayed in its entirety on the conditions that she engage in no further misconduct and pay the costs of these proceedings. If she fails to comply with either condition of the stay, the stay will be lifted and she will serve the entire one-year suspension. Costs are taxed to Polly-Murphy.

Judgment accordingly.

KENNEDY, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J.

_____

**FISCHER, J., dissenting.**

{¶ 23} I respectfully dissent and would impose a conditionally stayed 18-month suspension for the misconduct of respondent, Michelle Lyn Polly-Murphy.

{¶ 24} I have not found any meaningful basis for imposing a lesser sanction than the one that this court imposed in *Disciplinary Counsel v. Grigsby*, 128 Ohio St.3d 413, 2011-Ohio-1446, 945 N.E.2d 512. The majority opinion distinguishes this case from *Grigsby*, citing the presence of significant mitigating evidence in this case. Majority opinion at ¶ 20. In *Grigsby*, however, this court imposed a stayed 18-month suspension after acknowledging the existence of "significant mitigating evidence." *Grigsby* at ¶ 8.

{¶ 25} The significant mitigating evidence in *Grigsby* included the lack of a prior disciplinary record, prompt payment of restitution, self-reporting of the misconduct, full cooperation in the disciplinary process, a voluntary decision to forgo practicing law for more than a year, and the respondent's extreme remorse. *Id.* at ¶ 7. Those mitigating factors are significantly similar to (in fact, partly identical to) the mitigating factors present in this case. It is also worth noting that in *Grigsby*, the misuse of the respondent's corporate credit card resulted in the

misappropriation of $2,960 of the employer's funds. *Id*. at ¶ 3-4. In this case, however, not only did Polly-Murphy fail to disclose to her firm that she had received a $5,000 payment for legal services she provided to a client, but her misconduct also resulted in the imposition of $25,000 in fines against her client's corporate officers by the United States Securities and Exchange Commission.

{¶ 26} Based on these facts, I find no basis for imposing a lesser sanction than the one imposed in *Grigsby*. Indeed, the panel below agreed that "this case is in line with the *Grigsby* case," and the Board of Professional Conduct adopted that comparative analysis. It is unclear why, after having found this case to be in line with *Grigsby*, the panel and the board recommended a sanction different from the one imposed in *Grigsby*. Because I find that the sanction imposed in *Grigsby* is appropriate in this case, I respectfully dissent and would impose a stayed 18-month suspension.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Luper Neidenthal & Logan, and Amy L. Bostic; Colleen K. Nissl; and Kent R. Markus, Bar Counsel, and Thomas E. Zani, Deputy Bar Counsel, for relator.

Coughlan Law Firm, L.L.C., and Jonathan E. Coughlan, for respondent.

_____